[No. 13118.   Department Two.   June 1, 1916.]

WILLIAM MASKELL, *Respondent*, v. J. D. ALEXANDER *et al.*,
*Appellants.*[1]

NEGLIGENCE—PROXIMATE CAUSE—ACTIONS—EVIDENCE—SUFFICIENCY.
A motorcycle racer, practicing on a race track, is guilty of gross
negligence, where it appears that he came up behind another rider
and crossed in front of him, crowding him off the beaten path al-
though there was ample room to pass without doing so; and such
negligence was the proximate cause of an injury to a watchman
standing near who was run into by the rider who was interfered
with.

SAME—DUTY—MOTORCYCLISTS—WANTON OR RECKLESS ACTS. Motor-
cycle racers practicing on a race track owe a duty to a watchman
stationed on the track to exercise reasonable care and prudence for
his safety, and not to wantonly or recklessly injure him.

SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. A po-
liceman employed to watch a gate at a race track during motorcycle
practice is not guilty of contributory negligence in taking up his
place on the track near the gate where it was necessary for him to
be in order to enforce his authority and keep children off the track.

MASTER AND SERVANT—LIABILITY TO THIRD PERSONS—RELATION—
EVIDENCE. A motorcyclist whose negligence while practicing for a
race caused injuries to the plaintiff is shown *prima facie* to be the
servant of the defendant, where it appears that defendant owned the
motorcycle and exercised control and supervision over it and the
rider.

Appeal from a judgment of the superior court for Spokane
county, Sullivan, J., entered May 10, 1915, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by being struck by a motorcycle.
Affirmed.

*Crandell, Williams & Crandell,* for appellants.

*Robertson & Miller* and *E. W. Robertson,* for respondent.

HOLCOMB, J.—Respondent was injured on the grounds of
the Spokane Interstate Fair on September 6, 1914, between

[1]Reported in 157 Pac. 872.

five and six o'clock in the evening, by a motorcycle rider who was there practicing for a motorcycle race to occur on the fair grounds a week or so later. At the time, respondent was a special park policeman of the city of Spokane, on duty as such daily till five p. m., and was acting as a watchman or a special policeman for the fair management during the motorcycle practice after five o'clock in the evening, daily. His duties were to station himself at a point within the fence which separated the race track from the grandstand and grounds, and to prevent children and other watchers from getting out on the race track and being injured by the motorcyclists. There were at the time four or five motorcycle riders practicing on the race track and, among others, there was one by the name of Weeks, operating an Indian motorcycle owned by appellants; and another operated by a man named Sanders, called the Excelsior motorcycle, owned by the Inland Motorcycle Company. Both the Inland Motorcycle Company and appellants, as the Spokane Cycle Company, were sued by respondent, who alleged that the injury was the result of the combined negligence of both Weeks and Sanders and of the owners of both machines. The charge of the complaint in that respect was that Weeks and Sanders were coming down the track from the north at a speed of from fifty to sixty miles per hour toward the place where respondent was stationed, and when about seventy-five feet from respondent's position, Weeks, being slightly behind Sanders but moving faster, wantonly, recklessly, negligently, and carelessly ran his motorcycle from the right in front of Sanders, causing the rear wheel of his machine to strike the front wheel of Sanders' machine, causing it to swerve or veer to one side, and Sanders negligently and carelessly failed to right and direct his machine, and ran into plaintiff, injuring him.

It was the contention of respondent that both Weeks, the representative of the appellants, and Sanders, representative of the Inland Motorcycle Company, were negligent; Weeks,

by turning in front of Sanders and striking his wheel so as to interfere with Sanders' control thereof; and Sanders, in not righting his machine after it had been struck. The Inland Motorcycle Company admitted that Sanders was its servant and representative. The jury found in favor of defendant Inland Motorcycle Company, thus exonerating Sanders and his principal, and found against appellants, thus finding that Weeks alone was guilty of negligence which was the proximate cause of the injury.

I. It is first contended by appellants that there was no negligence on the part of Weeks, inasmuch as there was no negligence in running at a high rate of speed, since that was the object of their practice, and it was not upon a public street or place; and that there was no negligence in the action of Weeks in turning to the left or crossing Sanders' track, because Weeks and Sanders were both traveling in the center of a beaten pathway which was used by the motorcyclists for their purposes, which was fifteen to twenty feet out from the fence and gate within which respondent was standing; that, when he cut across in front of Sanders, the rear wheel of his machine touched the front wheel of Sanders' machine; that they were then about seventy-five feet away from where respondent stood, and that respondent was standing on the track itself and the gate was close behind him. The evidence for respondent tended to show—and the jury resolved it in his favor—that Sanders was ahead of Weeks in the center of the beaten path at least fifteen feet from the fence against which respondent was standing; that there was ample room for Weeks to pass Sanders; that Weeks crowded Sanders off the beaten path and crossed in front of him so closely that Sanders lost control of his machine. Under such circumstances, it cannot but be considered that, the jury having believed the facts as the respondent's evidence tends to show, Weeks was guilty of gross negligence, and his conduct was the proximate cause of the injury to respondent.

It is next contended that the riders owed no duty to respondent. Respondent was at a place where he was entitled to be and in the exercise of a duty for which he was employed. Being lawfully at the place where he stationed himself, the duty of those engaged in such practice as the motorcyclists was to exercise reasonable care and prudence for his safety. They could not wantonly or recklessly do anything that would result in his injury.

II.   Appellants assert that respondent was guilty of contributory negligence or assumed the risk attendant on his occupation in voluntarily taking his place on the track. The only theory upon which this contention could be sustained is that the respondent placed himself in a position or at a point where danger was so obvious and imminent that no person of ordinary care and prudence would have so placed himself. Respondent testified that his back was against the gate and that he was between the gate posts within the fence and in front of the grandstand. It is also shown that this approximate position was one which he was directed to take by his employer; that it was necessary for him to be there in order to see over the fence and enforce his authority to prevent children and other spectators from getting over the fence and out on the race track. There is nothing in the evidence to show that respondent was guilty of any other act which in any way contributed to his injury, or that he failed to do any other act by which he could have avoided the injury, than by merely stationing himself within the fence and the gate.

"If a person, in doing that which it is his right to do in the discharge of his duty, exercises ordinary care and prudence, he is not chargeable with contributory negligence as matter of law, although the result showed that he imperiled his life or personal safety in doing as he did." 29 Cyc. 523.

"He whose duty it is to care for the safety of others may do so, even though his duty leads him into great and visible dangers, and not be chargeable with contributory negligence." 7 Am. & Eng. Ency. Law (2d ed.), 396.

We see nothing negligent in respondent's action. He had no reason to suppose that, while stationed within the gateway of the fence inclosing the race track, he would be run into and injured as a result of the recklessness of the rider of one of the motorcycles. He was lawfully there, and it was the duty of those present using the race track to use care and take notice of him and not to injure him. *Kathmeyer v. Mehl* (N. J.), 60 Atl. 40; *Douglas v. Converse*, 248 Pa. 232, 93 Atl. 955.

III.   Appellants argue most strenuously that Weeks was not an employee or servant of the defendants, and that the principle *respondeat superior* cannot apply. They concede in their brief that there was sufficient evidence to make a *prima facie* case of the ownership of the machine on which Weeks rode. And this was made conclusive by the testimony of defendant Alexander himself. We have held in *Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329, that in cases of this kind, where it is shown that the vehicle doing the damage belonged to the defendant at the time of the injury, that fact establishes *prima facie* that the vehicle was in possession of the owner. It was also said in that case that, this being the rule, it is plain that the plaintiff made a case for the jury and the court did not err in refusing to direct a verdict in favor of the defendants. To the same effect are the automobile cases of *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040; *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519; *Purdy v. Sherman*, 74 Wash. 309, 133 Pac. 440; *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59. *Ludberg v. Barghoorn*, 73 Wash. 476, 131 Pac. 1165, is cited as stating a contrary view. In that case an automobile was in use by a borrower, and during its use an accident occurred and the owner was sued. Defendant moved for an instructed verdict, which was granted, and plaintiff appealed. This court said:

"This court has frequently held that, before a verdict can be sustained, it must be supported by substantial proofs.

. . . The fact that the automobile was admitted to belong to the defendant, and that the driver of the automobile was in the employ of the defendant, was sufficient to put the defendant upon proof that the automobile was not used in his business or for his employment, has been held in a number of cases. [Authorities cited.] But where upon the defense it is shown conclusively and without any substantial dispute that the automobile was not being used at the time of the injury in the defendant's employment or upon his business, and was being used by some other person on business of his own and without any reference to the business of the owner, it becomes the duty of the court to direct the judgment under Rem. & Bal. Code, § 340."

A similar view was expressed by this court in *Bursch v. Greenough Bros. Co.*, 79 Wash. 109, 139 Pac. 870. In the last cited case, it was conceded that defendant owned the auto which did the injury, and the court held that the sole question was whether the driver was acting within the scope of his employment, and the evidence was practically undisputed that he was not; and such was the fact in the *Ludberg* case. In the case at bar, there is evidence tending to show not only the ownership of the motorcycle in appellants, but that appellants exercised control and supervision over the motorcycle and over Weeks, the rider. There was some testimony as to admissions made by Mr. Alexander in reference to his control of the rider. There was sufficient testimony to make it a question of fact for the jury whether Weeks was a mere gratuitous bailee of the motorcycle or was an agent or servant of appellants. It was shown that Mr. Alexander joined with the owners of the other motorcycles which were entered in the race in selecting judges to preside over the race and in adopting rules to govern and control the details of the racing, and that at one meeting, after the accident and injury to respondent, Mr. Alexander had declared that, unless Weeks could ride in the race, none of the other riders of Indian motorcycles should ride. He had four or five Indian motorcycles entered in the race.

"To constitute the relation of master and servant, and to fix the liability of the former for the negligence of the latter, resulting in injuries to third persons, there must exist a right to select the person claimed to be a servant, and also the power and duty to control his acts in regard to the transaction out of which the injury arose." 20 Am. & Eng. Ency. Law (2d ed.), 180.

See, also, 1 Thompson, Negligence (2d ed.), § 579.

"Employment and payment of a person are not indispensable elements to charge one as a master for the negligence of one who renders him service. When one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable, as master, for the negligence of such servant, when the act or failure constituting the negligence comes within the apparent scope of the servant's employment, even though the person for whom the service is rendered has not employed or paid the servant." 20 Am. & Eng. Ency. Law (2d ed.), 181.

Under these rules, the evidence which went to the jury was sufficient, if the jury believed it, to establish the fact of employment of Weeks by appellants.

IV. Error is alleged in the giving of instruction No. 8, but there is no argument as to the error contained therein, the statement in the brief being that the instruction is not a statement of the law and is highly prejudicial, the error not having been eliminated by any other instruction in the series. Appellants' exception to the instruction states the reason for the exception as follows:

"That the instruction (No. 8) informs the jury that if they believe from the evidence that the defendants, or any one authorized to act for them, permitted Weeks to use a motorcycle at the preliminary practice races, and that that arrangement was in contemplation of some benefit to be derived or which reasonably might be expected would be derived from the use of such motorcycle in the races to the business of the Alexanders, then the defendants, the Alexanders, would be liable for the acts of Weeks; that the instruction is erroneous in the particular that it leads the jury to believe that if any benefit without the qualification was in

contemplation or could reasonably be expected, then the Alexanders would be liable for the acts of the rider."

The evidence in the case tended to show that the appellants entered four or five of their motorcycles in the races at the request of the management of the fair, and that appellants had expended seven or eight hundred or a thousand dollars in preparing their machines and otherwise fixing for the races, and that they expected to get benefit by way of advertising from the races; that there were four or five riders riding appellants' machines in the races. Whether there was any direct benefit or remuneration going to appellants from the use of the motorcycle by Weeks is not shown, and appellants deny that there was any. But it is not unreasonable to suppose and believe that if appellants were willing to expend a considerable sum of money in preparing their machines for the races, they did so for the purpose of some appreciable benefit to be derived therefrom. We believe the instruction complained of was not erroneous in view of the authorities cited in the preceding paragraph of this opinion. The court had previously instructed the jury (instruction No. 7) that the owner of a motorcycle had a legal right to loan the same, and that, if he did so and the borrower used it in and about his own business and the owner had no management or control over the motorcycle or the borrower while the borrower was so using it, then the owner would not be liable to any one who might be injured by the motorcycle while in such use by the borrower. This correctly stated the law as shown by the authorities previously cited, and this, in connection with instruction No. 8, we think fully covered the law applicable thereto.

We find no error. Judgment affirmed.

MAIN, FULLERTON, and PARKER, JJ., concur.